(A.R.D. 118)

UNITED STATES *v.* INTERNATIONAL PACKERS, LIMITED

Entry No. 880860–1/2.

First Division, Appellate Term

(Decided March 8, 1960)

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.

*Barnes, Richardson & Colburn* (*J. Bradley Colburn* of counsel) for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: This is an application for review of the decision and judgment of the trial court, Donlon, Judge, *International Packers, Limited* v. *United States*, 42 Cust. Ct. 453, Reap. Dec. 9304, and from the order of the court vacating and setting aside the original judgment and modifying it, as reported in *International Packers, Limited* v. *United States*, 42 Cust. Ct. 581, Reap. Dec. 9367.

The involved merchandise consists of canned corn beef, exported from Argentina on February 23, 1956, and entered at the port of New York. It was conceded that, on or about the date of exportation of the merchandise under consideration, such or similar merchandise was not freely sold or freely offered for sale for home consumption in Argentina or for exportation to the United States, and that United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the merchandise under consideration.

Appraisement of the said merchandise was made on the basis of United States value of $3.1010 per dozen tins, 12 ounces, net packed, under said section 402(e), as amended.

The trial court found, in Reap. Dec. 9304, *supra*, that the applicable United States value for the involved merchandise was $2.69475 per dozen tins, 12 ounces, net packed. By its order, reported in Reap. Dec. 9367, *supra*, the court found that the United States value of the merchandise was $2.7343 per dozen tins, 12 ounces, net packed, which is the amount claimed by the appellee herein as the proper dutiable value. The latter amount was predicated upon a finding of the trial court that a so-called "retention charge" by the Argentine Government of 15 per centum of the purchase price paid by the buyer was a proper allowance as a deduction in computing United States value under section 402(e), as amended (Reap. Dec. 9304, *supra*); and upon the further finding pursuant to stipulated facts that the "actual" buying rate of foreign exchange for the conversion into dollars of certain charges, costs, and expenses of a nondutiable character was 18 pesos per dollar and not the rate of 15.3 pesos per dollar at which the appraiser converted said charges into dollars (Reap. Dec. 9367, *supra*). It is the "actual" buying rate in a transaction

such as here under consideration which must be used. *Barr* v. *United States*, 324 U.S. 83.

Counsel for the respective parties stipulated that the appraised value included the so-called "retention charge" of 15 per centum of the f.o.b. value of the merchandise imposed and collected under Argentine law, and confined the issue herein to the question whether said retention charge is properly a part of United States value, as defined in section 402(e) of the Tariff Act of 1930, as amended. It further appears that the price at which such imported canned corn beef was freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, was $5.05 per unit of a dozen tins, 12 ounces, less 1 per centum cash discount, $0.0505, or a net United States unit price of $4.9995.

The evidence of record supports, in our opinion, the finding of the trial court that the retention charge here in issue was not a part of the United States value of the merchandise, and that such item is properly deductible as an allowance in the computation of United States value. The latter value is defined in section 402(e) of the Tariff Act of 1930, as amended, as "the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, * * * with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, * * *." Specifically, the chief issue here is whether this Argentine retention charge is a necessary expense "from the place of shipment to the place of delivery" of the merchandise, within the purview of section 402(e) of the tariff act, as amended. The facts of record in the case at bar indicate, in our opinion, that this retention charge is an item of expense connected with the exportation of the involved merchandise. It appears that under regulations of the Government of Argentina all exports of canned meats had to have the approval of the National Meat Board, under "Export License." The record discloses that the export license for the shipment at bar bears the statement: "Currency: Dollars U.S.A.—Official exchange: 18.00" (plaintiff's collective exhibit 10, Specimen 1). Thereafter, a "Loading Permit" or "Shipping Document" to lade the merchandise on a designated ship had to be obtained. Said document covering the shipment at bar shows on its face "Value in pesos Argentine currency: 585.000 equal to 32.500"—which is equivalent to 18 pesos per United States $1—and the further notation "Form 14, percentage withheld:

15%" (plaintiff's collective exhibit 10, Specimen 2). As disclosed by the affidavit of T. C. Skidmore, identified as the director and treasurer of the exporter of the involved merchandise (plaintiff's collective exhibit 10), the details of the proposed exportation had to be set forth in full in an "Application for Shipment" (plaintiff's collective exhibit 10, Specimen 3), in order to obtain the loading permit. It is apparent, therefore, that the application for shipment is a document which had to be acquired prior to the issuance of the shipping document or loading permit, which officially permitted the lading of the involved merchandise. Said "Application for Shipment" states the terms of the export transaction as to which the loading permit or shipping document was issued, disclosing the f.o.b. value and the rate of exchange "at the type of 18.00 pesos." The record further discloses that all official market exports from Argentina are made against prepayment or against an irrevocable letter of credit. The shipment of the canned meat under consideration was made against a revolving irrevocable letter of credit. It was necessary, in this connection, for the exporter to obtain on the application for shipment the certification of the bank through which the letter of credit had been opened that the letter of credit had been received by the bank. The bank then issued a so-called exchange cover form (No. 2991, plaintiff's collective exhibit 10, Specimen 6), showing thereon the total exchange to be delivered and the rate at which it is to be liquidated. This form serves as proof that the exchange has been covered *prior to shipment* and is thereafter delivered to the customs authorities together with the loading permit application.

As heretofore indicated and as further appears from the documents in evidence, under the applicable governmental regulations prevailing at the time of exportation of the involved goods, the foreign currency resulting from the export of the involved merchandise had to be negotiated in the official market at the exchange rate of 18 pesos for each United States dollar. Further, a retention tax of 15 per centum of the exchange resulting from such exportation was levied. This 15 per centum assessment was made against the full amount of the exchange proceeds which specifically represented, in the case of canned corn beef, the full f.o.b. dollar value of the product exported. In liquidating the letter of credit, the bank first converts the United States dollars to Argentine pesos at the rate of 18 Argentine pesos to 1 United States dollar and then deducts the 15 per centum retention charge from the total peso equivalent. Under pertinent regulations (Circular C. 2312, plaintiff's collective exhibit 10, Specimen 6), such liquidations are required to be made and reported daily. Foreign

exchange balances are established daily. According to the evidence of record, the dollars for the involved merchandise were converted into Argentine pesos on February 16, 1956.

The documents heretofore referred to and the "exchange control activities" directed or controlled by the Argentine Government disclose a governmental intention to control foreign exchange by means of controls over certain imports and exports. This control over the exportation by an Argentine seller of merchandise such as that at bar was not separate and apart from control over the manner of payment by the United States purchaser, or over the currency in which payment for the merchandise was to be made, or the rate of foreign exchange applicable to the involved transaction, or the Government charges which were exacted. Further, the charge exacted by the Argentine Government, the so-called "retention charge," was not on the exchange of currency as such but "it is on exchange for a particular purpose," which was "in connection with an exportation." (R. 18–19.) It would, accordingly, appear that the liability for the payment of the so-called "retention charge" arises at the time the export transaction was entered into. This retention charge is so bound up with and connected with the exportation of the merchandise, as disclosed by the record in this case, that, in our opinion, it is a "necessary expense" from the place of shipment to the place of delivery, and thus is an allowable deduction in the computation of the United States value. As stated by the trial court (Reap. Dec. 9304) :

This merchandise was sold f.o.b. Buenos Aires. The retention charge was laid on the full f.o.b. Buenos Aires value. * * * It is one of the costs in the Argentine of getting this merchandise exported from Argentina and, hence, is a necessary expense from the place of shipment to the place of delivery.

By stipulation entered into between the respective parties, it was agreed, in effect, that 18 pesos per United States dollar was the proper rate for the conversion of currency on the foreign exchange, which was the actual buying rate.

On the basis of the record in the case at bar and upon the applicable law under the relevant provisions of the tariff act, we adopt the findings of fact and conclusions of law, as set forth by the trial court in Reap. Dec. 9304, *supra*, as further amended in Reap. Dec. 9367, *supra*. Accordingly, we find and hold that the United States value of the canned corned beef here under consideration is $2.7343 per dozen tins, 12 ounces, net packed.

The decision and judgment of the trial court reported in Reap. Dec. 9304, *supra*, as amended by the modification thereof in Reap. Dec. 9367, *supra*, are affirmed.

Judgment will be entered accordingly.